UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| *In re Quest Diagnostics Incorporated ERISA Litigation* | Civil Action No. 20-07936-SDW-LDW <br><br> **OPINION** <br><br> May 4, 2021 |

**WIGENTON**, District Judge.

Before this Court is Defendants Quest Diagnostics Incorporated, the Quest Benefits Administration Committee, and the Quest Investment Committee's (collectively, "Defendants") Motion to Dismiss (D.E. 20; D.E. 21 ("Br.")) Plaintiffs Lawanda Lasha House Johnson, Rebecca A. Rice, Shalamar Curtis, and Raquel Aziz's ("Plaintiffs") Consolidated Complaint (D.E. 10 ("Compl.")) pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 29 U.S.C. § 1132(e). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendants' Motion is **DENIED.**

I. **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs are "participants and beneficiaries" in Quest Diagnostics Incorporated's Profit Sharing Plan, a qualified tax-deferred defined-contribution retirement plan (the "Plan"). (Compl. ¶¶ 1, 2.) As of December 31, 2018, the Plan had 40,488 participants and account balances/total assets of $3.9 billion. (*Id.* ¶ 5.) The Plan is a multiple-employer 401(k) plan, in which participants

1

direct their contributions to various investment options (the "Investment Menu").[1] (*Id.* ¶¶ 4, 22, 55.) Plan participants were charged investment management fees and a $31 per-participant annual fee for recordkeeping services. (*Id*. ¶¶ 33-40, 50.) At the relevant time, roughly thirteen of the Investment Menu options were target date funds, which allow participants to anticipate a retirement date and invest funds more conservatively as retirement approaches. (*Id*. ¶ 27.) Fidelity Management & Research Company ("Fidelity") is the "second largest target date fund provider by total assets" in the investment industry, and the target date funds that it offered included the Freedom funds (the "Active suite") and the Freedom Index funds (the "Index suite").[2] (*Id*. ¶ 28.) The Investment Menu included the Active suite, rather than the Index suite. (*Id*. ¶¶ 28-31.)

On June 29, 2020, Plaintiffs filed a Complaint alleging (1) breach of fiduciary duties, pursuant to the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. Section 1001, *et seq*. ("ERISA"), (2) failure to monitor, and, in the alternative to the ERISA claims, (3) breach of trust for imprudent Plan management. (D.E. 1 ¶¶ 75-90.) On October 2, 2020, Plaintiffs filed a Consolidated Class Action Complaint ("Consolidated Complaint"), which largely repeated the same allegations regarding overall Plan mismanagement. (*See generally* Compl.) Defendants moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) on December 15, 2020. (Br.) On

---

[1] Defendants have delegated the administration of the Plan to the Administrative Committee, which "exercises discretionary authority and control to administer, construe, and interpret the Plan and its assets." (Compl. ¶ 15.) "The Investment Oversight Committee is established by the Administrative Committee to assist Quest with the selection of investment funds offered for selection by Plan participants and is a fiduciary under ERISA …." (*Id.* ¶¶ 15, 16.) In addition, the Plan established a trust to hold Plan assets, which is managed by Fidelity Management Trust Company. (*Id*. ¶ 25.)

[2] The Consolidated Complaint focuses on three specific funds' performance issues to illustrate Defendants' broader alleged breaches: the target-date Freedom funds (the "Active Suite"), the non-target date DFA US Small Cap Value Portfolio ("DFA Fund"), and the non-target date Invesco Global Real Estate Fund ("Invesco Fund") (collectively, the "Funds"). (Compl. ¶¶ 25-49.)

January 14, 2021, Plaintiffs opposed. (D.E. 29.) On February 4, 2021, Defendants replied. (D.E. 30.) Since then, the parties have filed various supplemental letters.[3] (D.E. 31-32, 35-40.)

## II.     LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(1)

Pursuant to Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction and this Court "must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007); Fed. R. Civ. P. 12(b)(1). "[S]tanding is a jurisdictional matter," *id.* (citations omitted), and a motion to dismiss may present either a facial or factual attack to subject matter jurisdiction. A facial attack contests the complaint's sufficiency "'because of a defect on its face,' whereas a factual attack 'asserts that the factual underpinnings of the basis for jurisdiction fail to comport with the jurisdictional prerequisites.'" *Halabi v. Fed. Nat'l Mortg. Ass'n*, 2018 WL 706483, at *2 (D.N.J. Feb. 5, 2018) (citations omitted). In a factual attack, "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003).

### A.  Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), this Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). An adequate complaint includes "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

---

[3] To the extent this Court has considered the cases provided in these letters or unauthorized sur-replies, it has not considered superfluous argument.

Factual allegations must … raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). Pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Determining whether allegations are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### III. DISCUSSION

#### A. Rule 12(b)(1)

As a threshold matter, to the extent Defendants argue that Plaintiffs lack standing to challenge the Plan's inclusion of certain Funds, these arguments fail. (*See* Br. 4, 22-26.) To allege standing, a plaintiff must demonstrate (1) "an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Although Plaintiffs bear the burden of establishing the elements of standing to withstand dismissal, *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996), "[g]eneral factual allegations of injury resulting from the defendant's conduct may suffice," *Lujan*, 504 U.S. at 561.

4

Given the Consolidated Complaint's pleaded injury—the general mismanagement of the Plan—which "relates to the defendants' management of the Plan *as a whole*," Plaintiffs have sufficiently alleged standing to maintain this suit. *See Hay v. Gucci Am., Inc.*, Civ. No. 17-07148, 2018 WL 4815558, at *4 (D.N.J. Oct. 3, 2018) (citation omitted). In this context, it would be inappropriate to determine standing based solely on the individual funds in which the Plaintiffs invested. *See id.* Additionally, Defendants inappositely rely on defined-benefits cases, although the Plan involves a defined-contribution structure. (*Compare* Br. 25-26 (citing *Thole*, 140 S. Ct. at 1620) *with* Compl. ¶ 5.) While the *Thole* plaintiffs were guaranteed a fixed sum every month, in this case, Plaintiffs will receive the value of their individual accounts upon retirement. *See Thole*, 140 S. Ct. at 1616, 1620. Thus, Defendants' overarching investment strategies, management choices, and general Plan oversight could reasonably inflict actual harm to Plaintiffs, although defined-benefit participants may not necessarily have suffered similar repercussions. At bottom, the fact that Plaintiffs had not individually invested in every imaginable fund does not deprive them of their broader standing to "sue on behalf of the Plan and '[ ] seek relief under § 1132(a)(2) that sweeps beyond [their] own injury.'" *McGowan v. Barnabas Health, Inc.*, Civ. No. 20-13119, 2021 WL 1399870 (D.N.J. Apr. 13, 2021) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009)); *see also Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 156 (S.D.N.Y. 2017).

### B. Rule 12(b)(6)

#### 1. Breach of Fiduciary Duties (Count I)

ERISA fiduciaries are required to act according to duties of prudence and loyalty to Plan participants. *See* 29 U.S.C. § 1104(a)(1)(A)-(B). According to these duties, fiduciaries must act with the "care, skill, prudence, and diligence under the circumstances" that would be expected of

a prudent man, and do so "in the interest of the participants and beneficiaries" and "for the exclusive purpose" of "providing benefits to [them]" while "defraying reasonable expenses of administering the plan." *Id*. If the fiduciaries' selection and monitoring of the Investment Menu lacks the "marks of loyalty, skill, and diligence expected of an expert in the field," this may be evidence of fiduciary duty breaches. *See Sweda v. Univ. of Pa.*, 923 F.3d 320, 329 (3d Cir. 2019). Although "hindsight cannot play a role in determining whether a fiduciary's actions were prudent," *In re Unisys Sav. Plan Litig.*, Civ. No. 91-3067, 1997 WL 732473, at *23 (E.D. Pa. Nov. 24, 1997), "[m]any allegations concerning fiduciary conduct" are factual questions not properly addressed at the motion to dismiss stage, *Sweda*, 923 F.3d at 329; *see also Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014) (citations omitted) (such a determination is "context specific" and "turns on 'the [prevailing] circumstances'" at the time).

Here, Plaintiffs plausibly allege that Defendants breached these duties when making and monitoring the Plan's investments.[4] The Complaint is replete with allegations that the Funds were significantly trailing their respective benchmarks, participants were being further squeezed by higher-than-necessary expenses, and cheaper and better-performing alternatives were available to prudent fiduciaries. (*See generally* Compl.) As for the DFA Fund, Plaintiffs note that it underperformed its chosen benchmark, a universe of all available US small cap value stocks, by up to "427 basis points," which Plaintiffs suggest could have been an indicator to both the fund manager and the Plan administrator that a review of their stated strategy was merited. (*Id*. ¶ 46.) The same is true for the Invesco Fund, which was allegedly a "persistent poor performer against its benchmark, the Custom Invesco Global Real Estate Index," for five of six calendar years from 2014-2019, underperforming in some years by up to "801 basis points." (*Id*. ¶ 48.) As these

---

[4] Defendants do not dispute that the Plan falls within ERISA's scope or that Defendants are its fiduciaries. (*See* Br.)

6

benchmarks suggested to participants an aim to meet or exceed the relevant sets of indices after accounting for fees, it could be inferred that the alleged level of repeat underperformance in excess of higher-than-necessary management fees potentially reflects an insufficiently cautious choice.

As for the Active suite, Plaintiffs identify even more causes for concern, including: comparable, less-expensive Index suite offerings that outperformed their Active suite counterparts (*id.* ¶ 28); Defendants' Active suite QDIA choice, which unduly exposed plan participants, who may not have stated a clear preference for active management, to the risk of severely underperforming the applicable benchmark (*id.* ¶¶ 30-31); the Plan's retooled investment strategy, which favored additional risk and glide-path deviations "in an effort to augment performance" rather than invest safely (*id.* ¶¶ 36-37); the use of a higher-cost investor share class, despite the existence of a lower-cost institutional share class (*id.* ¶¶ 38-39); various media reports expressing skepticism at Fidelity's choices (*id.* ¶ 36 n.6, 41); and the fact that almost every Index suite fund "bears a higher star rating than the corresponding" Active suite fund (*id*. ¶ 42). Reasonably, Plaintiffs maintain that a prudent fiduciary would have, over time, observed that Funds were repeatedly trailing the market's performance, while exceeding the comparable funds in costs, and made corresponding adjustments to the Investment Menu or negotiated fee reductions.[5] (*See*, *e.g.*,

---

[5] For similar reasons, the Consolidated Complaint is based on more than "hindsight" bias. Although Defendants pull out every benchmark, rating, and underperformance statistics in the Consolidated Complaint and ask this Court to assess them individually, it is plausible that, taken together, these allegations would amount to a real-time warning that prudent fiduciaries must adjust the Plan's Investment Menu, fee structure, or management. This is equally true for Defendants' other factual interpretations of Plaintiffs' claims. (*See*, *e.g.*, Br. at 3, 11-12, 16-22.)

Further, to the extent Defendants attempt to characterize the Consolidated Complaint as "mandat[ing] the use of passively-managed funds," (Br. at 12, 19 n.10), this misinterprets Plaintiffs' claims. Thus, Defendants' reliance on the out-of-circuit cases is misplaced. (*See*, *e.g.*, Br. at 2, 5, 12 (citing *Hecker v. Deere*, 556 F.3d 575, 586 (7th Cir. 2009) and *Loomis v. Exelon*, 658 F.3d 667, 669-70 (7th Cir. 2011).) Both cases "generally assert[] that defendants violated their fiduciary duty by not offering certain investment options and selecting investment options with excessive fees." *See Bell v. Pension Comm. of ATH Holding Co., LLC*, Civ. No. 15-02062, 2017 WL 1091248, at *4 (S.D. Ind. Mar. 23, 2017). As noted previously, here, the Consolidated Complaint presents the Funds' failures as symptoms of systemic mismanagement and presents a litany of allegations that Defendants mismanaged the Plan as a whole. (*See* Compl.; D.E. 29 at 12 (stating that Plaintiffs do not contend that ERISA mandates passively-managed funds).)

¶ 53.) Throughout, these allegations are sufficiently plausible, specific, and measurable to survive dismissal.

The same is true regarding Plaintiffs' allegations of excessive fees, recordkeeping costs, and Defendants' failure to select the lowest cost funds. Although "fiduciaries have discretion in plan management," this discretion "must be reasonably supported in concept and must be implemented with proper care, skill, and caution." *Sweda*, 923 F.3d at 333, 328-29 (discussing the plan's ability to negotiate "favorable investment products") (citation and quotation omitted); *Pinnell v. Teva Pharms. USA, Inc.*, Civ. No. 19-5738, 2020 WL 1531870, at *5 (E.D. Pa. Mar. 31, 2020) (denying dismissal where fiduciaries retained expensive class shares despite lower-cost alternatives). Therefore, if Defendants had the means to materially reduce management fees and monitor recordkeeping and share costs, but chose not to do so, this could potentially state a claim for relief.[6] *See Hay*, 2018 WL 4815558, at *4; *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1077 (N. D. Cal. Mar. 13, 2017) (denying dismissal where "relationship[s]" between defendants and the trustee may have influenced the retention of higher-cost options).

In this case, Plaintiffs allege that Defendants overpaid management fees, the Plan failed to use its size and presumed negotiating power to reduce costs, and Fidelity was incentivized to promote its own high-fee investment products. (*See, e.g.*, Compl. ¶¶ 40, 50-60.) Together, the Consolidated Complaint's allegations and cost comparisons are sufficient to state a claim. (*Compare* Br. at 5, 30 (citing *Renfro v. Unisys Corp.*, 671 F.3d 314, 327-28 (3d Cir. 2011) in support of dismissing the excessive fee allegations) *with McGowan*, 2021 WL 1399870 at *6 (distinguishing *Renfro*, where the plaintiffs had asked the "Court to infer that the fiduciary had a flawed process," from *Sweda*, where the plaintiffs drew "straightforward" cost comparisons).)

---

[6] Whether "the Plan's recordkeeping fees exceed a prudent amount" may be a "question of fact," that is sometimes premature to determine at this stage. *See Kruger v. Novant Health*, Inc., 131 F. Supp. 3d 470, 479 (M.D. N.C. 2015).

Finally, although Defendants dedicate a large amount of their briefing to whether the Index suite can act as an Active suite benchmark, (*see*, *e.g.*, Br. 2-3, 11-16), at this stage, the Third Circuit requires a more "holistic" assessment.[7]  *Sweda*, 923 F.3d at 331; *Pinnell*, 2020 WL 1531870, at *5; *Nicolas v. Trs. of Princeton Univ.*, Civ. No. 17-3695, 2017 WL 4455897, at *4–5 (D.N.J. Sept. 25, 2017) (giving plaintiffs "every favorable inference" and denying dismissal); *see also Cunningham v. Cornell Univ.*, Civ. No. 16-6525, 2017 WL 4358769, at *7 (S.D.N.Y. Sept. 29, 2017); *In re MedStar ERISA Litig.*, 2021 WL 391701, at *6; *Schapker v. Waddell & Reed Fin., Inc.*, Civ. No. 17-2365, 2018 WL 1033277, at *8 (D. Kan. Feb. 22, 2018).  Taking the requisite holistic view of Plaintiffs' allegations regarding deficient Plan management, dismissal at this early stage based on the Consolidated Complaint's discussion of the Index suite would be inappropriate.

### 2. Failure to Monitor (Count II)

Under ERISA, a party that is authorized to appoint and remove plan fiduciaries has a corresponding duty to monitor those appointees. *See Graden v. Conexant Sys., Inc.*, 574 F. Supp. 2d 456, 466 (D.N.J. 2008) (collecting cases).  To state a claim for failure to monitor, Plaintiffs must demonstrate that Defendants failed to review the performance of trustees and fiduciaries at reasonable intervals to ensure that their performance was complying with the Plan's terms and

---

[7] Defendants largely rely on authority from out-of-circuit for this allegation. (*See*, *e.g.*, Br. at 2 (citing *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020)); *id.* at 3 (citing *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018)); *id.* at 12 (citing *Davis v. Salesforce.com Inc.*, Civ. No. 20-1753, 2020 WL 5893405, at *3-4 (N.D. Cal. Oct. 5, 2020).)  Nonetheless, as noted by another district court assessing the Eighth Circuit's *Davis* decision, "the parties' dispute over the propriety of comparing actively-managed funds to index funds raises questions of fact and law that have not been addressed by [this] Circuit."  *See Miller v. AutoZone, Inc.*, Civ. No. 19-02779, 2020 WL 6479564, at *4 (W.D. Tenn. Sept. 18, 2020).

Further, as noted by multiple courts considering similar allegations, "this case is distinguishable from the California court's opinion in *Davis* as the Plaintiffs have based their claims for imprudence on numerous other grounds." (D.E. 39-1 at 14); *Blackmon v. Zachary Holdings, Inc.*, Civ. No. 20-988, D.E. 33 (W.D. Tex. Apr. 22, 2021) (quoting *In re MedStar Litigation*, Civ. No. 20-1984, 2021 WL 391701, at *6 (D. Md. Feb. 4, 2021)).

9

needs. *See Scalia v. WPN Corp.*, 417 F. Supp. 3d 658, 669-70 (W.D. Pa. 2019). A duty to monitor is "derivative in nature and is premised on an earlier breach of a fiduciary duty." *Id*. at 669.

Count II adequately states a claim. This Court has accepted that the Consolidated Complaint adequately alleges an "underlying breach of [ERISA] duties. . . ." *In re Allergan ERISA Litig.,* Civ. No. 17-1554, 2018 WL 8415676, at *7 (D.N.J. July 2, 2018). The Consolidated Complaint also allege that Defendants failed to "monitor," "evaluate," and "remove" appointees, which allowed the Plan to "suffer[] enormous losses as a result" of those appointees' "imprudent actions." (Compl. ¶ 90.) Plaintiffs further allege that Defendants failed to monitor the Plan's investments by "offering and maintaining" the Active suite, although the Index suite outperformed it. (*Id.* ¶ 41); *see N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp.*, 709 F.3d 109, 121 (2d Cir. 2013) (courts "may draw a reasonable inference of liability when the facts alleged are suggestive of . . . a finding of misconduct"). Here, given the Consolidated Complaint's allegations, this Court can infer that Defendants' actions may have also implicated their duty to monitor.

### 3. Breach of Trust (Count III)

Plaintiffs bring Count III in the alternative, should any parties be found not to qualify as fiduciaries pursuant to ERISA. (*See* Compl. ¶ 95.) To state a claim for breach of trust, Plaintiffs must allege that the Defendants had "actual or constructive knowledge of the circumstances that rendered" the breach. *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000). Here, Plaintiffs allege the Defendants "possessed the requisite knowledge and information to avoid the fiduciary breaches at issue" and knowingly "permitted the Plan to offer" a poor Investment Menu. (Compl. ¶ 96.) Plaintiffs sufficiently state a claim that Defendants knew or should have known about the nonfeasance or malfeasance of others. (*Id*. ¶¶ 15-17.)

**CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss is **DENIED.** An appropriate order follows.

    /s/ Susan D. Wigenton    <br>**SUSAN D. WIGENTON, U.S.D.J.**

| | |
|---|---|
| Orig: | Clerk |
| Cc: | Leda D. Wettre |